ACCEPTED
15-25-00130-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
11/5/2025 3:46 PM
CHRISTOPHER A. PRINE
CLERK

**CAUSE NO. 15-25-00130-CV**

**FIFTEENTH COURT OF APPEALS**

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
11/5/2025 4:40:50 PM
CHRISTOPHER A. PRINE
Clerk

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION,**
*Appellant,*
**v.**
**AMY BAZAN a/k/a AMY FAIRBANK,**
*Appellee.*

---

**On Appeal from the 353rd Judicial District Court of Travis County, Texas**

**No. D-1-GN-22-000773**

---

**APPELLEE AMY BAZAN a/k/a AMY FAIRBANK'S REPLY BRIEF AND REQUEST FOR ORAL ARGUMENT**

---

Ladd Law Firm, P.L.L.C.
Norman R. Ladd
State Bar No. 24041285
Prema Autry
Texas State Bar No. 24082357
223 S. Bonner Ave.
Tyler, Texas 75702
T: (903) 705-7211
F: (903) 705-7221
nladd@laddtxlaw.com
pautry@laddtxlaw.com
**ATTORNEYS FOR APPELLEE**

# Table of Contents

Table of Contents ................................................................. 2

Index of Authorities ............................................................ 3

Statement Regarding Oral Argument .......................................... 4

Statement of Facts .............................................................. 4

Summary of the Argument...................................................... 7

Standard of Review ............................................................. 9

Appellee's Reply Argument ..................................................... 10

Conclusion & Prayer ............................................................ 17

Certificate of Service ........................................................... 19

# INDEX OF AUTHORITY

**Case**

*Tex. Health Facilities Comm'n v. Charter Med,-Dallas, Inc.,*
665 S.W.2d 446, 450 (1984)........................................................ 10

*Dyer v. Tex. Comm'n on Envtl. Quality,* 646 S.W.3d at 514 ....................... 10

40 Texas Admin. Code §707.455(b)(3) ....................................... 17

## Statement Regarding Oral Argument

Appellee, Amy Fairbank, requests oral argument in this appeal. Fairbank believes that in order for her to exercise her full due process rights, she should be granted the opportunity for oral argument. There is also a fundamental disagreement as to whether the SOAH court's decision was reasonably supported by substantial evidence that would be better remedied with oral argument.

## Statement of Facts

On July 14, 2017, Amy Bazan (AKA Fairbank), received a Temporary Restraining Order (TRO) against Rafael Bazan. The TRO also came with an Order Setting Hearing for Temporary Orders in their divorce proceedings. On July 26, 2017, in the midst of the contentious divorce between Amy Fairbank and Rafael Bazan, her now ex-husband, an intake was called into the DFPS hotline. The intake *alleged* that Fairbank was neglectful in her supervision of her children, Child 1 and Child 2. It also *alleged* that she physically abused the children. The intake call was made just a day prior to when Rafael Bazan was ordered to turn over financial details to the court so that it could determine the amount of child support he would be required to pay. Rafael Bazan and Fairbank entered into a Rule 11 Agreement on August 22, 2017.

The intake was assigned to Andrew Chesnut, an investigator in the Child Protective Services unit of DFPS. During the months of July and August 2017, Mr.

Chesnut conducted interviews and gathered documents and pictures. On September 6, 2017, Fairbank was notified that a finding of reason to believe for Neglectful Supervision and Physical Abuse had been made against her and on September 13, 2018, she was notified of her right to a due process hearing at the State Office of Administrative Hearings. Fairbank timely filed her due process request with SOAH on September 25, 2018.

At trial, HHSC offered testimony from Andrew Chesnut, the DFPS investigator, the Investigation Report, which is merely a summary, one picture, that of a fly swatter, the Interim Report of the Amicus Attorney, a Rule 11 Agreement, and an offense report from the Smith County Sheriff's Office.[1] HHSC did not offer any pictures or medical documentation relating to physical injuries.

The investigation report included brief summaries of the forensic interviews that were conducted with Child 1 and Child 2. Child 1 makes no mention of being disciplined or spanked with a fly swatter.[2] Child 2, however, does tell the forensic interviewer that Plaintiff spanked Child 1 with the swatter.[3] Both children were interviewed by their amicus attorney prior to their forensic interviews.

---

[1] Report 17-17983 from the Smith County Sheriff's Office was offered, but not admitted at the trial court.
[2] Administrative Record, Entry 2, Pg. 000059 - 000060
[3] Administrative Record, Entry 2, Pg. 000060

Child 1 told the amicus about the fly swatter incident and also mentioned that Rafael Bazan talked about her mother, Fairbank, and about the divorce proceedings.[4] Child 2 mentioned being spanked by her mom, but there was no mention of a fly swatter.[5] Child 1 also stated that her father Rafael Bazan spoke to her about the case and about her mom.[6] Neither child made mention of Child 1 having received medical care for any alleged injury nor was there mention of law enforcement being called as a result of the alleged spanking.

When the amicus attorney interviewed Rafael Bazan, he mentions an incident that was alleged to have occurred in April of 2017. He said that Fairbank came outside upset and told him that she had made Child 1 bleed.[7] He did not call law enforcement as a result of this allegedly occurring, nor did he seek medical treatment for the child. Mr. Bazan had to be admonished by the amicus attorney and the judge in his divorce case because he continually discussed the case and any actions of Ms. Fairbank with the children.

In her interview with the amicus attorney, Fairbank mentioned the fly swatter incident and that the fly swatter was broken and that it had cut the child. There was no mention of bleeding or bruising.[8]

---

[4] Administrative Record, Entry 2, Pg. 000210 - 000212
[5] Administrative Record, Entry 2, Pg. 000212 - 000214
[6] Administrative Record, Entry 2, Pg. 000212 - 000214
[7] Administrative Record, Entry 2, Pg. 000214 - 000216
[8] Administrative Record, Entry 2, Pg. 000216 - 000219

Investigator Andrew Chesnut met with the children on July 27, 2017, in a face-to-face meeting. He observed both children to be free from any bruises or marks. He did not interview either child as they were already scheduled for their forensic interviews. Mr. Chesnut spoke with Rafael Bazan over the phone twice. In his first conversation he makes no mention of Fairbank using a fly swatter on Child 1. During the second phone call, Mr. Bazan denied having any pictures of the alleged injury caused by Fairbank.[9] In her one face-to-face interview with Andrew Chesnut, Ms. Fairbank admits to using the fly swatter, but stated that it only caused a partial skin break. Again, there is no mention of bleeding or bruising.

During her testimony before the trial court, Fairbank asserted that spanking her biological children, even with the fly swatter, was reasonable discipline and that reasonable discipline was legal and allowed in the State of Texas. She believed that the discipline was reasonable as there were only minor temporary marks. When asked about the marks at trial, Fairbank stated that they were more of a scratch, indicating that any marks on Child 1 were transient in nature.

## Summary of the Argument

This appeal involves a suit for judicial review. The SOAH ALJ's findings of abuse were *not* supported by substantial evidence—a standard which the district court *properly* applied. There is not substantial evidence in the record that Fairbank

---

[9] Administrative Record, Entry 2, Pg. 000199

abused her child and therefore, her name should be removed from the Child Abuse and Neglect Central Registry, and the decision of the District Court to reverse the trial court should stand.

The trial court erred in its decision and order when finding that HHSC had met their burden and proven by a *preponderance of credible evidence* that Fairbank had physically abused Child 1. For the decision of the trial court to be maintained, there must be substantial evidence in the record that Ms. Fairbank abused her child. However, it is Fairbank's assertion that the burden was not met and therefore the decision of the lower court should have been reversed thereby overturning the physical abuse finding. The District Court agreed with Fairbank and reversed the trial court.

Without pictures or medical documentation, HHSC did prove that the injuries that were alleged to have been sustained by Child 1 were anything but transient. Even if there was a partial skin break that bled, there was no evidence presented to show that there was a large amount of blood loss and/or that the bleeding lasted for a lengthy period of time. Ms. Fairbank testified that the injury was only a partial skin break that was more like a small cut. All of this, with the fact that there was a material dispute as to the degree of the injuries goes to show that there was not a *preponderance of credible evidence.*

The evidence presented at the SOAH trial did not prove that Plaintiff Fairbank physically abused Child 1 under the definition given in the code. While Ms. Fairbank admitted to spanking her child, she did so in a manner that meets the reasonable discipline standard. The trial court put their focus on the instrument, a small flexible plastic fly swatter, when their focus should have been on the result of the spanking.

The upheld finding of physical abuse was made by the trial court even though it was not reasonably supported by substantial evidence when considering the reliable and probative evidence presented in the record. The case was properly reversed. The district court did not ignore substantial evidence when found that there was no substantial evidence in the record to support the finding of physical abuse against Ms. Fairbank. The district court did not improperly usurp the agency's authority, nor did it substitute its own judgment for that of the agency. The district court's decision should be affirmed.

## Standard of Review

While the law requires that the substantial evidence rule be used in this case and that a court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion, it can and shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences,

conclusions, or decisions are not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole. *Tex. Health Facilities Comm'n v. Charter Med,-Dallas, Inc., 665 S.W.2d 446, 450 (*1984). Here, the reliable and probative evidence in the record shows that Plaintiff Fairbank did not physically abuse her child.

Reasonable minds would not have reached the same conclusion that the trial court did in this case. It is only when "reasonable minds could have reached the same conclusion that the agency must have reached" that the court must uphold the agency's ultimate decision. *Dyer v. Tex. Comm'n on Envtl. Quality,* 646 S.W.3d at 514 (quoting *Tex. Health Facilities Comm'n v. Charter Med.-Dall., Inc.,* 665 S.W. 2d 446, 453 (Tex. 1984)). In this case, reasonable minds would have disagreed, and therefore the district court's decision to reverse the SOAH court must be affirmed.

## Appellee's Reply Argument

### I. The Decision and Order on the abuse issues does NOT further the goals of the Texas Family Code and the state's interest in protecting children from physical abuse.

It can be agreed that the purpose of Chapter 261 of the Texas Family Code is to protect children. One of the ways this can be ensured is by conducting *prompt and thorough* investigations into suspected abuse or neglect reports when they are made. The report in this case was not made promptly, as the incident was alleged

to have occurred in April of 2017, with the intake being made to the Abuse/Neglect Hotline in July of 2017. [10] Nor were the allegations made during the intake investigated thoroughly.

The months between when Child 1 was disciplined in a reasonable manner by Ms. Fairbank and when the intake was made, proved that there was not a prompt and immediate call to the abuse/neglect hotline. The intake was not made until Fairbank, and her now ex-husband, Rafael Bazan were in the midst of a contentious divorce. Mr. Bazan weaponized DFPS against Ms. Fairbank in order to obtain custody of their two daughters. By ruling in favor of HHSC in this case, the trial court ignored the central purpose of Chapter 261 of the Texas Family Code. The trial court ignored the fact that the intake call was made months later, that there were no calls to law enforcement regarding the incident, no medical records, and no pictures of the scratch.

The definition of "abuse" in Texas Family Code Section 261.001(1)(c) included a reasonable discipline component, which the trial court ignored. Reasonable discipline is defined in Texas Administrative Code Section 707.455 as discipline that is reasonable in manner and moderate in degree, does not constitute cruelty, reckless behavior, or grossly negligent behavior; and is administered for purposes of restraining or correcting the child. The discipline shall not include an

---

[10] Administrative Record, Entry 2, Pg. 000214 - 000216

act that is likely to cause or causes an injury more serious than transient pain or minor temporary marks.

There is nothing in the record to prove that any injuries, marks, bruises, or scratches were anything other than minor temporary marks. No one asked the child whether she felt pain when spanked with the fly swatter. Without anyone having asked the child if she felt pain and how long it lasted, if she had, there is no proof that there was anything other than transient pain. The Defendant also failed to provide any pictures of scratch. There was not one piece of evidence to show that Plaintiff Fairbank's spanking of her child was anything other than reasonable discipline. Had it been more serious than transient pain or minor temporary marks, surely Mr. Bazan would have taken his child to receive medical treatment and not wait until months after the spanking to only bring it up in the divorce proceedings. There was no substantial evidence to prove physical abuse, and therefore the ruling should have been reversed, as was done at the district court.

## II. The Decision and Order on the abuse issue is NOT supported by substantial evidence.

At trial, the Defendant offered testimony from Andrew Chesnut, in which he testified that he believed the children were credible and that they had made consistent statements. He said this while also acknowledging that the children had been talked to about the case by their father, and that this had been done to the extent that it led to him being admonished for it. Mr. Chesnut testified and

confirmed that the types of actions taken by Rafael Bazan during the pendency of the divorce are not allowed and that they lead to "coaching." When there is even a hint of coaching in a situation such as a divorce, it lends less credibility and reliability to the statements given by the children.

The statements given by the children were also not consistent. When looking at the investigation report, which only included brief summaries of the forensic interviews that were conducted with Child 1 and Child 2, one can see how the statements are not consistent. For instance, Child 1 makes no mention of being disciplined or spanked with a fly swatter.[11] Child 2, however, tells the forensic interviewer that Fairbank spanked Child 1 with the swatter.[12]

The children's interviews with the amicus attorney are also not consistent with the facts as HHSC wants this Court to believe. When interviewed by the amicus attorney, Child 2 talked about the fly swatter incident and also mentioned that Rafael Bazan talked about her mother, Fairbank, and about the divorce proceedings.[13] Child 1 mentioned being spanked by her mom, but there was no mention of a fly swatter.[14] Child 1 also stated that her father Rafael Bazan spoke to her about the case and about her mom.[15]Neither child made mention of Child 1

---

[11] Administrative Record, Entry 2, Pg. 000059 - 000060
[12] Administrative Record, Entry 2, Pg. 000060
[13] Administrative Record, Entry 2, Pg. 000210 - 000212
[14] Administrative Record, Entry 2, Pg. 000212 - 000214
[15] Administrative Record, Entry 2, Pg. 000212 - 000214

having received medical care for any alleged injury nor was there mention of law enforcement being called as a result of the alleged spanking. As you can see, the children are only consistent when it comes to their father having spoken to them about the divorce case and negatively about their mother.

Because the statements given by the children to both the forensic interviewer and the amicus attorney are not consistent, they cannot be relied upon. Therefore, they cannot be used to show that HHSC had a *preponderance of credible evidence* at the trial court level and *substantial evidence* at the appellate level. One must now look at the statements given by Fairbank and Rafael Bazan.

Prior to being interviewed by Andrew Chesnut, Mr. Bazan sat down with the amicus attorney in his divorce case. He mentions an incident that was alleged to have occurred in April of 2017. He said that Fairbank came outside upset and told him that she had made Child 1 bleed.[16] He did not call law enforcement as a result of this allegedly occurring, nor did he seek medical treatment for the child. Mr. Bazan had to be admonished by the amicus attorney and the judge in his divorce case because he continually discussed the case and any actions of Ms. Fairbank with the children.

Mr. Chesnut spoke with Rafael Bazan over the phone twice and in his first conversation he makes no mention of Fairbank using a fly swatter on Child 1.

---

[16] Administrative Record, Entry 2, Pg. 000214 - 000216

During the second phone call, Mr. Bazan denied having any pictures of the alleged injury caused by Fairbank.[17] Again, just as with the interview with the amicus, there is not mention of Rafael Bazan being so concerned with Child 1's injuries that he sought or provided medical attention for her, nor did he call law enforcement to have Fairbank arrested and charged with Injury to a Child. Mr. Bazan took no action to demonstrate to anyone that Ms. Fairbank did anything more substantial and serious than reasonable discipline.

Next, we turn to the statements given by Fairbank. When interviewed by the amicus attorney, Ms. Fairbank mentions the fly swatter incident and that the fly swatter was broken and that it had cut the child. There was no mention of bleeding or bruising.[18] Fairbank was also interviewed by Andrew Chesnut, and she admits to using the fly swatter, but that it only caused a partial skin break. Again, there is no mention of bleeding or bruising. When Mr. Chesnut interviewed Ms. Fairbank's parents, they noted no concerns with how she disciplined the children, nor had they witnessed anything that could be described as physically abusing either child.

During her testimony before the trial court, Ms. Fairbank asserted that spanking her biological children, even with the fly swatter, was reasonable discipline and that reasonable discipline was legal and allowed in Texas under the

---

[17] Administrative Record, Entry 2, Pg. 000199
[18] Administrative Record, Entry 2, Pg. 000216 - 000219

Texas Family Code's definition of physical abuse. She believed that the discipline was reasonable as there were only minor temporary marks. When asked about the marks at trial, Fairbank stated that they were more of a scratch, indicating that any marks on Child 1 were transient in nature.

HHSC did not offer testimony or other evidence of a medical nature. They did not call any witnesses to testify to any marks, cuts, bruises or scratches that Child 1 obtained as a result of being spanked that lasted longer than a few days. The Defendant did not present any visual evidence of the injuries that Child 1 was said to have obtained. Rafael Bazan did not take any pictures and when Mr. Chesnut met with the children, they were both free from any marks or bruises. When taken into consideration with the fact that the incident was alleged to have occurred in April or May of 2017 and was not mentioned or reported until July of 2017, it is more likely that any injury that may have occurred was not substantial and did not warrant medical treatment as a result. It further proves that any marks were only transient in nature.

> "Reasonable discipline" means discipline that is reasonable in manner and moderate in degree; does not constitute cruelty, reckless behavior, or grossly negligent behavior; and is administered for purposes of restraining or correcting the child. It shall not include an act that is likely to cause or causes injury more serious than transient pain or minor temporary marks. The age, size, and condition of the child; the location of the injury; and the frequency or recurrence of injuries shall be considered when determining whether the discipline is reasonable and moderate.

40 Texas Admin. Code §707.455(b)(3)

The Texas Administrative Code, in §707.455 defines reasonable discipline and states that 'reasonable discipline can be administered for the purposes of correcting the behavior of the child', which is what Fairbank testified to. She stated that Child 1 had flooded the bathroom and as a result, she was disciplined. The discipline must not be cruel, reckless, or grossly negligent. There was no evidence to state that the spanking was cruel, reckless, or grossly negligent. Reasonable discipline must also not cause or be likely to cause anything more serious than transient pain or minor temporary marks. The defendant did not put forth any evidence to support their assumption that the injuries were more serious than minor temporary marks or that the child felt more than transient pain.

There was not a substantial amount of evidence presented by HHSC when considering the reliable and probative evidence in the record. Nor did the Commission did not meet their burden of a preponderance of credible evidence at the trial court and therefore this case should be reversed.

### Conclusion & Prayer

Because HHSC did not present a preponderance of credible evidence at the trial court and because there is not substantial evidence of physical abuse when considering the reliable and probative evidence in the record, this case was properly reversed by the district court, and their decision should stand. Without

any evidence to show that spanking her biological child was anything other than reasonable, the trial court should have evaluated the evidence in the light most favorable to Fairbank, which would have led to the physical abuse finding to be overturned, which is exactly what the district court ruled. Accordingly, Appellee Fairbank respectfully request the Court to affirm the decision of the district court.

Respectfully submitted,

**LADD LAW FIRM, P.L.L.C.**

_____
Norman R. Ladd
State Bar No. 24041285
Prema Autry
State Bar No. 24082357
223 S. Bonner Ave.
Tyler, Texas 75702
T: (903) 705-7211
F: (903) 705-7221
nladd@laddtxlaw.com
pautry@laddtxlaw.com
**ATTORNEYS FOR PLAINTIFF**

## Certificate of Service

I certify that a true and correct copy of this *Appellee's Reply Brief* was filed electronically and was served on counsel for Appellant on November 5, 2025, pursuant with Texas Rule of Appellate Procedure 9.4(i)(2)(B), this brief contains 3,946 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

| Ted Ross<br>State Bar Number: 24008890<br>Administrative Law Division<br>P. O. Box 12548<br>Austin, Texas 78711-2548<br>T: (512) 475-4191<br>F: (512) 320-0167<br>ted.ross@oag.texas.gov | ✓ E-Service |
|---|---|

_____
Prema Autry

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Cheryl Kuester on behalf of Prema Autry
Bar No. 24082357
ckuester@laddtxlaw.com
Envelope ID: 107716161
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellee Amy Bazan a/k/a Amy Fairbank's Reply Brief and Request for Oral Argument
Status as of 11/5/2025 4:52 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Jeff Lutz | | jeff.lutz@oag.texas.gov | 11/5/2025 4:40:50 PM | SENT |
| Ted Ross | | ted.ross@oag.texas.gov | 11/5/2025 4:40:50 PM | SENT |
| Cheryl Kuester | | ckuester@laddtxlaw.com | 11/5/2025 4:40:50 PM | SENT |
| Norman Ladd | | nladd@laddtxlaw.com | 11/5/2025 4:40:50 PM | SENT |
| Prema Autry | | pautry@laddtxlaw.com | 11/5/2025 4:40:50 PM | SENT |